IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re                                          : Chapter 15
                                               :
EarthRenew IP Holdings LLC, et al.[1]          : Case No.: 10-_____ (___)
                                               :
                                               : Joint Administration Pending
Debtor in a Foreign Proceeding.                :
---------------------------------------------------------------- x

**DECLARATION OF ROBERT J. TAYLOR IN SUPPORT OF PETITIONER'S
(I) VERIFIED PETITIONS UNDER CHAPTER 15, (II) MOTION FOR JOINT
ADMINISTRATION, (III) MOTION FOR PROVISIONAL AND FINAL RELIEF
IN RECOGNITION OF FOREIGN MAIN PROCEEDINGS, AND (IV) MOTION TO
ESTABLISH CERTAIN NOTICE PROCEDURES IN CONNECTION WITH
FILING OF VERIFIED PETITIONS UNDER CHAPTER 15**

I, Robert J. Taylor, declare as follows:

1.  I am Vice-President of RSM Richter Inc. ("RSM" or the "Receiver") and have personal knowledge of the matters set forth herein. RSM is the court-appointed receiver and duly authorized foreign representative for the above-captioned debtors (collectively, the "Debtors") in Canadian receivership proceedings pending before the Court of Queen's Bench of Alberta for the Judicial District of Calgary, Canada (the "Canadian Court") under section 47(1) of the Bankruptcy and Insolvency Act (Canada) (the "BIA") (the "Canadian Receivership Proceeding").

---

[1] The Debtors in the Chapter 15 Cases, along with the last four digits of their United States Tax Identification Number or Canadian Business Number, as applicable, are: EarthRenew IP Holdings LLC ("EarthRenew IP"); EarthRenew Corporation (0985); EarthRenew, Inc. (2163); EarthRenew Management General Partner Ltd. (2218); EarthRenew Management LP (5417); EarthRenew Operational Employee LP (2155); EarthRenew Solutions LP (6554); EarthRenew Strathmore 1 LP (3013); and EarthRenew Strathmore General Partner Ltd. (7013). The Debtors' corporate headquarters are located at, and the mailing address for the Debtors is, 1925 18th Avenue N.E., Suite 201, Calgary, Alberta, T2E 7T8, Canada. Only EarthRenew, Inc. maintains a United States Tax Identification Number. Canadian Business Numbers have been listed for the other Debtors, with the exception of EarthRenew IP, which is a United States entity disregarded for tax purposes and therefore does not maintain a United States Tax Identification Number.

2. On September 15, 2010, Nile Capital I S.à.r.l, Nile Capital II S.à.r.l., Luxor Capital Partners, LP, Luxor Capital Partners Offshore Master Fund, LP (the "Lenders"), petitioned the Canadian Court for the appointment of a receiver pursuant to certain Secured Debentures (as defined below).

3. To the best of my knowledge, information and belief, the Canadian Receivership Proceeding is a collective judicial proceeding in Canada under Canadian law relating to insolvency or the adjustment of debt in which the assets and affairs of the Debtors are subject to the control and supervision of the Canadian Court for the purpose of liquidation. Accordingly, I believe that the Canadian Receivership Proceeding is a "foreign proceeding" within the meaning of 11 U.S.C. § 101(23).

4. I respectfully submit this declaration (the "Declaration") in support of the (i) verified petitions, (ii) the motion for joint administration of these cases, (iii) the motion for a provisional order and final order in recognition of the foreign main proceedings and (iv) the motion to establish certain notice procedures in connection with the filing of the verified petitions.

## GENERAL BACKGROUND

### A. The Debtors' History, Operations and Corporate Structure

5. On the date hereof, (the "Petition Date"), the Receiver filed with this Court verified voluntary petitions (collectively, the "Chapter 15 Petitions") for each of the Debtors under chapter 15 of the Bankruptcy Code.

6. Corporate Organization. An organizational chart showing the corporate structure of the Debtors is attached as Exhibit A hereto. As set forth on Exhibit A:

069573.1001

a. EarthRenew Corporation ("EarthRenew") is an Alberta corporation that was incorporated under the *Business Corporations Act* (Alberta).[2]

b. EarthRenew, Inc., a California Corporation, is a wholly-owned subsidiary of EarthRenew and holds EarthRenew's intellectual property assets in the United States.

c. EarthRenew IP Holdings LLC, a Delaware limited liability company, is a wholly-owned subsidiary of EarthRenew and holds EarthRenew's intellectual property assets that are owned outside of Canada and the United States.

d. EarthRenew Strathmore 1 LP, an Alberta limited partnership, is wholly-owned by EarthRenew and owns EarthRenew's Strathmore Plant.

e. EarthRenew Strathmore General Partner Ltd., an Alberta corporation, is wholly-owned by EarthRenew and is the general partner of Strathmore LP.

f. EarthRenew Management General Partner Ltd., an Alberta corporation, is wholly-owned by EarthRenew and is the general partner of EarthRenew Operations Employee LP, EarthRenew Management LP and EarthRenew Solutions LP. EarthRenew Operational Employee LP, an Alberta limited partnership, is wholly-owned by EarthRenew.

g. EarthRenew Management LP, an Alberta limited partnership, is wholly-owned by EarthRenew.

h. EarthRenew Solutions LP, an Alberta limited partnership, is wholly-owned by EarthRenew.

7. Debtors' Operations. The Debtors were a leading manufacturer of organic matter fertilizer which was established in 1999. The Debtors' main office is located at 1925 18th Avenue, N.E., Suite 201, Calgary, Alberta, Canada (the "Calgary Head Office") with additional offices located at 504 Ave. Alhambra, Suite 203, Half Moon Bay, California (the "U.S. Office") and 7575 N. Del Mar, Suite 102, Fresno, California (the "U.S. Field Office"). In 2007, the Debtors' also completed the construction of their plant located on a 25,000 head

---

[2] Earth Renew was incorporated on December 22, 1999, as EarthRenew Organics Ltd. ("Organics Ltd."). On January 1, 2010, its articles of incorporation were amended to change the name of the corporation from "EarthRenew Organics Ltd." to "EarthRenew Corporation".

3

cattle feedlot near Strathmore, Alberta, Canada (the "Strathmore Plant") at which the fertilizer produced from this plant was sold commercially to agricultural retailers in the United States and Canada. Approximately $248,000 in sales was generated in 2009. Additionally, in 2008, the Debtors began the process of commissioning the construction of modules for five additional plants to be located in various locations in the United States with the intent to increase production levels through, among other things, upgraded equipment and design. At the time of this filing, this process has not proceeded beyond the initial planning and negotiation phase.

8. The Debtors' status as a leading manufacturer of organic matter fertilizer was achieved largely by providing comprehensive, cost effective technology solutions for healthy soils through their patented technologies that apply the exhaust from an industrial gas turbine directly in heat processing while the turbine generates electricity. Effectively, the exhaust of the turbine was used directly in industrial processing without heat exchangers, replacing conventional fuel burners. Sale of electricity offsets the fuel costs. Overall, the processes utilized up to 85% of the energy in the fuel. In comparison to the status quo, the use of the turbine as a burner increases heat processing efficiencies by over 60% and provided protection from fluctuating electricity and fuel prices producing substantial increases in operating gross margins. This unique use of the turbine formed the basis of the Debtors' patent portfolio.

9. Applications of these patented technologies to industrial uses include: bio-solids, manure and waste treatment; various heat processing systems; unique water desalination processing and water treatment for tailing ponds and industrial lagoons. The Debtors also have patented the fertilizer products made from uniquely processing manure,

biosolids or green wastes at their facilities. Accordingly, the Debtors have a broad-based global patent portfolio of practical technologies with over 2,200 claims in 92 countries.

10. The Debtors currently employ thirty-five (35) employees, twenty-five (25) of which are located in Canada and six (6) of which are located in the United States.[3] All of the employees are employed through special purposes entities, EarthRenew Management LP for management employees and EarthRenew Operational Employee LP for the Strathmore Plant employees that hold the employment contracts.

B. **Events Leading to the Appointment of a Receiver and Contemplated Sale Process**

11. Secured Debentures. EarthRenew issued a 5% convertible secured debenture dated January 4, 2010, bearing certificate number CSD-6, in the amount of $2,744,349 in favor of Nile Capital I S.à.r.l. (the "Nile I Secured Debenture") which was amended by agreement dated April 12, 2010. The Nile I Secured Debenture matures on March 31, 2011.[4] On January 4, 2010, EarthRenew also issued a 5% convertible secured debenture dated May 18, 2010, bearing certificate number CSD-7 in the amount of $3,255,651 in favor of Nile Capital II S.à.r.l. (the "Nile II Secured Debenture"). The Nile II Secured Debenture also matures on March 31, 2011.[5]

12. On August 12, 2010, EarthRenew also issued a 5% convertible secured debenture, bearing certificate number CSD-8, in the amount of $228,696 in favor of Luxor

---

[3] The Debtors also employed an additional nine (9) employees who were laid off prior to the Canadian Receivership Proceeding.

[4] The Nile I Secured Debenture was initially issued to Luxor Capital pursuant to a secured debenture dated September 3, 2009, bearing certificate number CSD-3. It was transferred by Luxor Capital to Nile Capital I S.à.r.l. on January 4, 2010 and was re-issued by EarthRenew to Nile Capital I S.à.r.l.

[5] The Nile II Secured Debenture was initially issued to Luxor Capital Partners Offshore, Ltd. ("Luxor Offshore") pursuant to a secured debenture dated September 3, 2009, bearing certificate number CSD-4. It was transferred by Luxor Offshore to Nile Capital II S.à.r.l. on January 4, 2010 and was re-issued by EarthRenew to Nile Capital I S.à.r.l. on this same date.

5

YCST01:10232121.5                                                                         069573.1001

Capital (the "Luxor Capital Secured Debenture") which matures on March 31, 2011. On August 12, 2010, EarthRenew issued a 5% convertible secured debenture dated August 12, 2010, bearing certificate number CSD-9, in the amount of $271,304 in favor of Luxor Master Fund (the "Luxor Master Fund Secured Debenture" together with the Nile I Secured Debenture, Nile II Secured Debenture, Luxor Capital Secured Debenture and Luxor Master Fund Secured Debenture, the "Secured Debentures"). The Luxor Master Fund Secured Debenture also matures on March 31, 2011.

13. As security for the amounts payable pursuant to each one of the Secured Debentures (the "Security Interest"), EarthRenew granted to the holder of each one of the Secured Debentures a security interest in:

   a. all of its present and after acquired Personal Property (as defined in each one of the Secured Debentures) and in each of its present and future Subsidiaries (as defined in each one of the Secured Debentures); and

   b. all of its, and its present and future Subsidiaries (as defined in each one of the Secured Debentures), undertaking, real property and assets, both present and future, of every kind and nature, wherever situate.

14. Each one of the Secured Debentures provides that upon the occurrence of an Event of a Default by EarthRenew, the entire outstanding principal and interest owing pursuant to the Secured Debentures shall be accelerated and shall be due and owing and may exercise their rights to protect their Security Interest, including, among other things, the commencement of court proceedings to appoint a receiver of all or part of the collateral.

15. In 2010, the Debtors suffered a significant decline in revenue and liquidity due to a significant drop in business operations and revenues. On or about July or August 2010, the Debtors attempted to raise capital to fund their operations through an initial public offering

("IPO"). However, the Debtors were ultimately unable to proceed with the IPO because its inability to raise sufficient funds to maintain their business operations.

16. As a result, on or about September 15, 2010, the Debtors ceased operations, which constituted an Event of Default under the Secured Debentures.

17. The Canadian Receivership Proceeding was subsequently commenced by the Lenders without objection from the Debtors, pursuant to which RSM was appointed receiver on September 15, 2010. A copy of the order appointing RSM as receiver is attached to the *Verified Petition for Recognition of Foreign Recognition and Other Relief* as Exhibit A (the "Receivership Order"). The Receivership Order was entered on September 15, 2010.[6]

18. Receivership Order. While the Receivership Order grants the Receiver broad authority consistent with the Secured Debentures, the primary goals of the receivership matter are to:

   a. market and sell the Debtors' assets in an expeditious manner in order to maximize recoveries, subject to the requirements of the Receivership Order, Canadian law, and Chapter 15 of the Bankruptcy Code;

   b. take possession and control of the Debtors' assets, along with any proceeds of the assets, pending in any sale process; and

---

[6] Pursuant to the Receivership Order, the Receiver is empowered to borrow, by way of revolving credit or otherwise, such monies from time to time as it may consider necessary or desirable at such rate or rates of interest as it deems advisable for such period or periods of time as it may arrange, for the purpose of funding the exercise of the powers and duties conferred upon the Receiver by the Receivership Order; provided, however, that the outstanding principal amount does not exceed $1,000,000 at any time. The whole of the Debtors' assets is charged by way of a fixed and specific charge as security for the payment of the monies borrowed, together with interest and charges thereon, in priority to all security interests, trusts, liens, charges and encumbrances, statutory or otherwise, in favor of any Person but subordinate in priority to the Receiver's Charge (each as defined in the Receivership Order). Under the Receivership Order, the Receiver is further authorized to issue certificates (the "Receiver's Certificates"), substantially in the form annexed as Schedule A to the Receivership Order, for any amount borrowed by it pursuant to such order. In accordance with the Receivership Order, as of the date hereof, the Receiver has borrowed CDN$300,000 in the aggregate, evidenced by two Receiver's Certificates: one in the amount of CDN$ 162,782.54 issued to Luxor Capital Partners Offshore Master Fund, LP; and the other in the amount of CDN$137,217.46 advanced by Luxor Capital Partners LP.

7

  c. manage those aspects of the Debtors' business and operations as the Receiver deems appropriate to facilitate realization on the assets (including by retaining employees of the Debtors, as appropriate).

19. <u>Chapter 15 Filing Authorized</u>. The Receivership Order specifically contemplates the institution of these Chapter 15 proceedings by the Receiver to assist the Receiver in carrying out its duties under the Receivership Order. Paragraph 27 of the Receivership Order provides as follows:

> The Receiver be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

20. <u>Proposed Sale Process</u>. As set forth more fully below, the Receiver, subject to the requirements of Canadian law (with respect to assets in Canada) and Chapter 15 of the Bankruptcy Code (with respect to assets in the United States), has commence a process through which the business and assets of the Debtors will be sold to one or more third parties. Paragraph 3(l) of the Receivership Order grants the Receiver, among other things, the authority to:

> sell, convey, transfer, lease or assign the Property or any part or parts thereof out of the ordinary course of business,
>
> > (i) without the approval of this Court in respect of any transaction not exceeding $500,000, provided that the aggregate consideration for all such transactions does not exceed $1,000,000; and
> >
> > (ii) with the approval of this Court in respect of any transaction in which the purchase price or the aggregate purchase price exceeds the applicable amount set out in the preceding clause and in each such case notice under subsection 60(8) of the Alberta *Personal Property Security Act*, or section 31 of the Alberta *Mortgages Act*, as the case may be, shall not be required, and in each case the Alberta *Bulk Sales Act* shall not apply.

Receivership Order, paragraph 3(l).

21. After careful consideration, the Receiver determined that the floor established by a purchase of all or substantially all of the Debtors' assets by the Stalking Horse Bidder (as

defined below) pursuant to the terms of the Asset Purchase Agreement (as defined below), subject to higher and better bids in an open auction process offered the best opportunity to maximize value for the Debtors' assets.

22. On October 13, 2010, RSM, solely in its capacity as the Receiver, and B089021 B.C. Ltd., a nominee corporation formed by the Lenders (the "Stalking Horse Bidder"), entered into that certain Agreement of Purchase and Sale, dated October 13, 2010 (the "Asset Purchase Agreement").[7] Pursuant to the Asset Purchase Agreement, the Stalking Horse Bidder shall pay to the Receiver, in consideration for the sale, assignment, conveyance and transfer of the Assets to the Stalking Horse Bidder at Closing, the amount of CDN$5.1 million and the Priority Debt, plus all applicable taxes (the "Purchase Price"). Under Section 4.1 of the Asset Purchase Agreement, the Purchase Price shall be satisfied by some combination of the assumption of the Secured Debt and the Priority Debt and cash, subject to the reasonable discretion of the Receiver, and any agreement to assume all or part of the Secured Debt and/or the Priority Debt shall be valued on a dollar for dollar basis as if the Secured Debt and/or the Priority Debt were paid in cash. Further, pursuant to Section 6.4 of the Asset Purchase Agreement, any incremental amount to the bid by the Stalking Horse Bidder in the context of the Auction may be satisfied by a cash payment or, to the extent that any such incremental amount is an amount to which Luxor is entitled (but only to that extent), by the assumption by the Stalking Horse Bidder of that amount of the unsecured debt of the Debtors owed to Luxor.

23. The Receiver subsequently moved the Canadian Court for entry of an order authorizing the Receiver to enter into the Asset Purchase Agreement and establishing certain

---

[7] Capitalized terms used but not otherwise defined in this paragraph shall have the meaning ascribed to such terms in the Asset Purchase Agreement.

9

bidding procedures. On October 18, 2010, the Canadian Court entered an order (the "Canadian Bidding Procedure Order") which approved the execution of the Asset Purchase Agreement and subsequent marketing process and provided for among other things: (i) the process for the solicitation of potential bidders, (ii) the establishment of November 15, 2010 as the deadline by which interested purchasers must submit competing bids, (iii) the setting of November 19, 2010 as the date of auction, and (iv) a scheduling of a subsequent hearing to consider the sale.[8]

C. **Motion for Provisional and Final Relief in Recognition of Foreign Main Proceeding**

24. This Court should recognize the Canadian Receivership Proceeding as a "foreign main proceeding," as defined in section 1502(4) of the Bankruptcy Code. The Bankruptcy Code provides that a foreign proceeding is a "foreign main proceeding" if it is pending in the country where the debtor has its "center of its main interests." *See* 11 U.S.C. § 1517(b)(1).

25. The Debtors' "center of main interest" is clearly in Alberta, Canada. All of the Debtors' principal corporate, management, banking, and strategic functions are undertaken in Canada. Specifically:

    a.    EarthRenew, the Canadian parent, is the sole shareholder of the EarthRenew, Inc. and EarthRenew IP Holdings LLC (together, the "U.S. Subsidiaries").

    b.    The registered office and corporate headquarters for each of the Debtors is in Calgary, Alberta, Canada (the "Calgary Head Office").

---

[8] By separate motion and upon notice, the Receiver intends to seek entry of orders from the Court affirming both the Canadian Bidding Procedures Order and any subsequent order from the Canadian Court approving the sale of any of the Debtors' assets (the "Canadian Sale Order"). The summary of the relief granted pursuant to the Canadian Bidding Procedures Order and the terms of the Asset Purchase Agreement contained herein are provided for the Court's convenience only.

YCST01:10232121.5                                                                                                        069573.1001

c. EarthRenew is managed and operated on a consolidated basis from Canada and all strategic decision making and corporate management functions are taken in the Calgary Head Office.

d. The marketing, accounting, finance departments are in the Calgary Head Office.

e. All new business initiatives originate from the Calgary Head Office.

f. Overall budget and strategy set from the Calgary Head Office.

g. The information technology systems (including servers) are all in Canada.

h. The accounts receivables and account payables are managed from Canada, and all checks are issued from Canada.

i. All of the significant common suppliers, creditors and stakeholders of the Debtors are located in Canada.

j. Contracts are negotiated at the Calgary Head Office and all purchase orders are issued from Calgary including purchase orders for equipment ordered from manufacturers in the United States.

k. The majority of customer relationships were negotiated from the Calgary Head Office.

l. Funding and cash management are integrated and controlled from Canada and banking in the United States is funded by intercompany transfers from Canada.

m. All of the Debtors' manufacturing capability is located in Strathmore, Canada.

n. Of the Debtors' 40 employees (prior to the lay-offs), only 6 were based in the United States and the remainder are in Canada.

o. The Debtors' President and all other executives except one (who answers to the Canadian board of directors) are based in Canada.

p. The officers and directors of the U.S. Subsidiaries hold their positions by virtue of their positions in Canadian entities.

q. The principal books and records of each of the Debtors are located in the Calgary Head Office, as well as the accounting staff. All financial statements of the Debtors are prepared at the Calgary Head Office, including monthly and annual financial statements.

26. The Canadian and United States operations are integrated and function in a coordinated way, although the operations for the United States Subsidiaries are entirely dependent upon the Canadian operations and would be unable to operate or function independently. In the United States, both EarthRenew IP Holdings LLC and EarthRenew, Inc. hold certain intellectual property, and EarthRenew, Inc. has a limited amount of inventory, equipment and accounts receivable.

27. Pursuant to the *Receiver's Motion for Provisional and Final Relief In Recognition of a Foreign Main Proceeding Pursuant to Sections 105(a), 1519, 1520 and 1521 of the Bankruptcy Code* (the "Recognition Motion"), contemporaneously filed herewith, the Receiver seeks entry of an order (the "Provisional Relief Order") granting certain provisional relief until such time as the Court hears the Petition for Recognition. Preliminary relief under section 1519 of the Bankruptcy Code, pending this Court's determination with respect to recognition of the Canadian Receivership Proceeding as a "foreign main proceeding," is necessary to protect and preserve the Debtors' property and prevent irreparable harm to the Debtors' creditors.

28. In short, the failure to secure the Debtors' assets will irreparably harm the Debtors and deplete their resources, thereby limiting the Receiver's ability to maximize the assets available, on an equitable basis, for all creditors of the Debtors' estates through the Proposed Sale Process as described above. The proposed relief will ease these concerns and allow for the orderly administration and receivership of the Debtors' affairs and equitable resolution of the Debtors' liabilities with supervision by the Canadian Court. A stay of actions against the Debtors will not only preserve the Debtors' assets for the benefit of their creditors,

but also allow the Receiver to devote its full attention to effectively and efficiently administering the Canadian Receivership Proceeding.

29. Similarly, the potential for real harm exists if the Receiver is not immediately allowed to assume control of and manage the Debtors' assets in the United States in connection with the United States operations. Simply put, absent such relief no one will effectively be in charge of the Debtors' United States operations and no one will be able to pay any necessary expenses of operation. Under such circumstances, employees likely will leave, assets likely will disappear, and the overall value of the United States assets will be unnecessarily impaired. Placing the Receiver in control of the United States assets will enable the Receiver to minimize the losses to the Debtors and their creditors.

**D.** **Motion for Joint Administration**

30. Joint administration is warranted in these cases. The Debtors are affiliated entities with closely related financial affairs and business operations, and joint administration will ease the administrative burden on the parties. The Receiver anticipates that the various notices, applications, motions, other pleadings, hearings and orders in these cases will affect each of the Debtors. The failure to administer these cases jointly would result in duplicative pleadings and service. Such unnecessary duplication would impose avoidable expenses on all parties.

31. Joint administration will permit this court to use a single docket for the jointly administered cases and combine notices to creditors and other parties in interest of the Debtors' estates. Joint administration will protect parties-in-interest by ensuring that such parties in interest will be appropriately apprised of all matters before the Court in both of the jointly administered cases.

13

### E. Motion to Establish Certain Notice Procedures in Connection with Filing of Verified Petitions Under Chapter 15

32. Contemporaneously with the filing of these chapter 15 cases, the Receiver filed a motion (the "Notice Procedures Motion") requesting this Court to enter an order specifying the form and manner of service of the notice (the "Recognition Notice") of (i) the filing of (a) the Debtors' chapter 15 petitions and certain related pleadings pursuant to chapter 15 of the Bankruptcy Code, including the Recognition Motion, (ii) the Court's entry of the Provisional Relief Order, (iii) the deadline (the "Recognition Objection Deadline") to object to this Court's entry of a final order (the "Recognition Order"), after notice and a hearing, granting recognition of the Canadian Receivership Proceeding as a foreign main proceeding under the Bankruptcy Code and enforcing the Receivership Order on a permanent basis in the United States, and the hearing (the "Recognition Hearing") for this Court to consider the Chapter 15 Petitions and entry of the Recognition Order.

33. The Debtors have hundreds of creditors, potential creditors, and other parties in interest, all of which need to be provided with notice of the Provisional Relief Order (once entered), the proposed Recognition Order, the Recognition Objection Deadline and the Recognition Hearing. Under the facts and circumstances of the Debtors' Chapter 15 Cases, the Receiver submits that service of the Recognition Notice in the manner proposed in the Notice Procedures Motion will provide the various parties in interest in these Chapter 15 Cases due and sufficient notice and service of such matters and any associated objection deadline and hearing dates.

34. Furthermore, the Recognition Notice provides multiple efficient ways for any party receiving such notice to obtain copies of pleadings filed in these Chapter 15 Cases, as it provides a telephone number, website address, and email address that can be used to obtain such

documents. At the same time, it does not burden the Receiver or the Debtors and their estates with the significant costs necessarily attendant to copying and mailing the various documents associated with the Recognition Notice to hundreds of creditors and other parties in interest.

*Signature page follows*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: Wilmington, Delaware
       October ___, 2010

                                              **Robert J. Taylor, on behalf of RSM Richter Inc.,**
                                              in its capacity as the court-appointed receiver and duly authorized foreign representative of the Debtors

# Exhibit A

Corporate Structure

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: Wilmington, Delaware
October 28, 2010

_____
**Robert J. Taylor, on behalf of RSM Richter Inc.,**
in its capacity as the court-appointed receiver and
duly authorized foreign representative of the
Debtors

# Exhibit A

Corporate Structure

